UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| RICKEY PACK,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Acting Commissioner<br>of Social Security,<br><br>    Defendant. | Civil No. 0:20-cv-00024-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Rickey Pack seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied his claim for supplemental security income and disability insurance benefits. Mr. Pack brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering his claim. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Pack's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

**A**

Plaintiff Rickey Pack initially filed an application for Disability Insurance Benefits (DIB) on March 23, 2017, and for Supplemental Security Insurance Benefits (SSI) on March 27, 2017, alleging disability beginning December 1, 2016. [Transcript (hereinafter, "Tr.") 195–202, 217.] Both claims were denied on August 16, 2017, and then again on October 9, 2017. [Tr. 65–116, 126–139.] Mr. Pack filed a request for a hearing on October 16, 2017, and on February 14, 2019, Administrative Law Judge (ALJ) Neil Morholt held a video conference. [Tr. 22.] On

March 14, 2019, ALJ Morholt rendered a decision concluding that Mr. Pack was not disabled. [Tr. 19–37.] The Appeals Council denied Mr. Pack's request for review, making the March 14, 2019, ALJ decision final. [Tr. 5–8.]; 20 C.F.R. § 422.210(a).

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work experience) prevent him from

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

2

doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At step one, the ALJ found Mr. Pack had not engaged in substantial gainful activity since the alleged onset date, December 1, 2016. [Tr. 28.] At step two, the ALJ found Mr. Pack to suffer from the following severe impairments: degenerative joint disease of the left knee, with total knee replacement due to end stage osteoarthritis. *Id*. At step three, the ALJ determined that Mr. Pack's combination of impairments did not meet or medically equal one of the listed impairments in C.F.R. Part 404 or Part 416. *Id*. Before moving on to step four, the ALJ considered the record and determined that Mr. Pack possessed the following residual functioning capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that [Mr. Pack] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can occasionally stoop, kneel, and crouch, but never crawl. He should avoid frequent exposure to vibration. He must use a cane for ambulation on uneven surfaces.

[Tr. 31.] After explaining the RFC, the ALJ found at step four that Mr. Pack is not capable of performing past relevant work as an aircraft technician, welder, parts hanger, or landscape

3

laborer. [Tr. 35.] At step five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* Accordingly, the ALJ determined at step five that Mr. Pack was not disabled since December 1, 2016. [Tr. 36.] Mr. Pack filed this action for review on March 16, 2020. [R. 1.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court

4

would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Mr. Pack presents three arguments to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, he argues (1) the ALJ's RFC failed to include the appropriate limitations to accurately describe the claimant, (2) the ALJ erred in assigning partial weight to a non-examiner and discounting the treating surgeon's opinion, and (3) the vocational expert's testimony is not based upon substantial evidence. [R. 17-1 at 1.] For the reasons set forth below, Mr. Pack's arguments do not warrant reversal of the ALJ's determination.

### A

First, Mr. Pack argues the ALJ failed to formulate an RFC that accurately describes him. [R. 17-1 at 4.] In making this argument, Mr. Pack alleges that the ALJ failed to include sufficient limitations in the RFC to support his severe knee impairments and failed to sufficiently consider Mr. Pack's testimony, medical evidence, and subjective testing. *Id.* at 5, 7. Furthermore, Mr. Pack alleges that the ALJ failed to include limitations in the RFC to support his difficulties standing, walking, and weightbearing and also failed to account for his use of a cane or need to elevate his legs. *Id.* at 5. Finally, Mr. Pack alleges that the inclusion of a cane for ambulation on uneven surfaces was neither satisfactory nor accurate in describing him. *Id.* at 8.

In making his RFC determination, ALJ Morholt carefully considered the entire record, including a consideration of Mr. Pack's symptoms, objective medical evidence and other relevant evidence, and opinion evidence. [Tr. 31.] Throughout the ALJ's written opinion, he

5

discussed medical evidence, including the treating physician, consultative medical examiners, and the state agency medical consultant. [Tr. 31–34.]

ALJ Morholt examined in detail Mr. Pack's testimony and took into account each alleged medical condition, the relevant medical evidence, and subjective testing. Mr. Pack has a history of hypertension. [Tr. 29.] However, his treating physician noted that Mr. Pack's hypertension was "well controlled . . . and he was currently asymptomatic." *Id.* Furthermore, ALJ Morholt looked to the record to determine that Mr. Pack's other impairments, including diverticulitis, anxiety, obesity and depression are non-severe. *Id.* The ALJ also determined from the record that Mr. Pack's claim of arthritis of the hands and shoulders was not supported by objective evidence. *Id.* Ultimately, the ALJ concluded that claimants alleged impairments and medically determinable impairments "considered singly and in combination" are non-severe impairments, with the exception of "degenerative joint disease of the left knee with total knee replacement due to end stage osteoarthritis," which he determined to be severe. *Id.*

Mr. Pack estimated during his testimony that he could not stand for longer than 30 minutes at a time. [Tr. 56.] However, "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of health and Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986). Here, the medical evidence does not support the specific proposition that Mr. Pack can only stand for 30 minutes at a time. Mr. Pack's treating physician Dr. Reese completed a medical statement on October 31, 2018, and recommended Mr. Pack be limited to standing and walking two hours in an 8-hour day with breaks and sitting two hours in an 8-hour day with breaks. [Tr. 579.] However, records indicate that Mr. Pack began treatment with Ms. Fowler-Ratliff in January 2017 and continued through June 2018, and Ms. Fowler-Ratliff recommended Mr. Pack walk 30-45 minutes per day for exercise. [Tr. 418, 427, 432,

460, 465, 470, 475.] Treatment notes from Ms. Fowler-Ratliff did not stipulate that Mr. Pack needed an assistive device for his exercise. Furthermore, the evidence demonstrates that Mr. Pack has been using a gym membership to exercise twice a week for 30 to 60 minutes, and his medical records also demonstrate steady and consistent improvement of Mr. Pack's symptoms following the arthroscopic surgery and total knee replacement. [Tr. 565, 568, 570, 574, 576.] Mr. Pack's ability to exercise for up to an hour twice a week and demonstrated knee improvement militate against Mr. Pack's testimony that he can only stand for 30 minutes at a time.

An ALJ's determination of a claimant's credibility is accorded great deference. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Here, it was reasonable for the ALJ to discount Mr. Pack's testimony regarding additional medical conditions and his ability to stand for only 30 minutes at a time. The ALJ accounted for Mr. Pack's difficulties in standing, walking, and weightbearing by pointing to evidence in the record of continued improvement and by inclusion of a cane for ambulation on uneven surfaces in the RFC, and as stated above, Mr. Pack's exercise regimen and continued knee improvement following his total knee replacement provide substantial evidence that support the ALJ's RFC determination.

Finally, the ALJ's inclusion of a cane for ambulation on uneven surfaces was reasonable, and it was also reasonable for the ALJ not to include that Mr. Pack must elevate his legs in the RFC. Records indicate that Mr. Pack, while not using a cane around his house, was using one periodically when he would leave the house, particularly when walking on concrete. [Tr. 46.] Given this information, it was reasonable for the ALJ to include that Mr. Pack use a cane for ambulation on uneven surfaces. As to leg elevation, other than temporary advice to elevate the legs during post-operative recovery, there is no medical evidence in the record supporting the

7

claim that Mr. Pack must elevate his leg daily. Because Mr. Pack did not include medical evidence supporting the claim that he needed to elevate his leg, it was reasonable for the ALJ not to include that specific limitation in the RFC. *See* 20 C.F.R. § 404.1545(a)(3); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (holding that the claimant bears the burden of proving an RFC that is more restrictive than the ALJ's determination). Therefore, substantial evidence supports the ALJ's RFC finding.

**B**

Next, Mr. Pack argues that the ALJ erred in assigning little weight to treating surgeon Dr. Laura Reese's opinion and partial weight to non-examiner Dr. P. Saranga's opinion. [R. 17-1 at 1.] The Social Security Administration has set forth certain guidelines that an ALJ must follow when determining how much weight to assign a treating medical source. The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2).

Other factors that must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(c)(2)(i)–(ii), (c)(3)–(5); 416.927(c)(2)(i)–(ii), (c)(3)–(5).

The regulations also contain a clear procedural requirement that an ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The purpose of the reason-giving requirement is to allow "claimants to understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (cleaned up). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546.

Here, the ALJ explained that he assigned only little weight to Dr. Reese's assessment because other evidence in the record did not support Dr. Reese's evaluation. [Tr. 34.] Dr. Reese filled out a capacities assessment form indicating that Mr. Pack could sit for two hours out of an eight-hour workday and could stand/walk for two hours out of an eight-hour workday. *Id*. However, as the ALJ articulated, Dr. Reese merely circled boxes on a form and did not include any references to physical examination findings that supported such a high degree of limitation. [Tr. 34.]

Furthermore, Dr. Reese's other records do not support such a high degree of limitation, as the medical records actually show gradual but continual improvement on the part of Mr. Pack. [Tr. 568.] For example, on June 1, 2018, Dr. Reese stated that Mr. Pack was "doing better and

9

bending the left knee more." [Tr. 565.]  On June 27, 2018, Dr. Reese stated that Mr. Pack was "doing much better." [Tr. 568.]  On October 19, 2018, Dr. Reese wrote that Mr. Pack "was not using any type of assistive devices," that his "pain today is at a low level" and that Mr. Pack had told her his knew was "getting better.' [Tr. 574.]  On December 21, 2018, Dr. Reese indicated that although Mr. Pack was still experiencing pain in his calf and left ankle, he was bending his knee farther.  [Tr. 576.]

Ultimately, the ALJ found Dr. Reese's opinion to be based primarily on subjective allegations and articulated that the assessment failed to line up with other medical evidence in the record.  [Tr. 78.]  An ALJ may discount the opinion of a doctor when the opinion is not supported by objective medical evidence or if the opinion is inconsistent with the record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529–30 (6th Cir. 1997).  The ALJ is only required to give a treating physician's opinions "great weight if they are supported by sufficient clinical findings and are consistent with the evidence." *Id*. at 530.  Here, that was not the case and the ALJ reasonably provided little weight to Dr. Reese's opinion.

As for Dr. Saranga's opinion, the ALJ appropriately assigned partial weight.  Dr. Saranga, a non-examining State Agency medical consultant, examined Mr. Pack on October 8, 2017, and determined that Mr. Pack could perform work at the light exertional level, including "frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes or scaffolds." [Tr. 33.]  Although this analysis may have been more accurate in 2017, the ALJ only entitled partial weight to Dr. Saranga's opinion because after Dr. Saranga examined Mr. Pack, Mr. Pack underwent total knee replacement surgery in March of 2018 and surgery to address an arthrofibrosis issue in June of 2018.  *Id.*  The ALJ gave a small amount of weight to Dr. Saranga's opinion because Dr. Saranga did in fact examine Mr. Pack—but he balanced Dr.

Saranga's examination with other available medical evidence to determine that "a greater degree of functional limitation exists" after Mr. Pack's surgeries and therefore only gave Dr. Saranga's assessment partial weight. *Id.* Therefore, the ALJ did not err in the weight he assigned to either Dr. Reese or Dr. Saranga.

### C

Mr. Pack's third and final argument is that the vocational expert's testimony is not based upon substantial evidence. [R. 17-1 at 1.] In support of this argument, Mr. Pack includes a section of the testimony that portrays the ALJ asking the vocational expert hypothetical questions. *Id.* at 14. Mr. Pack also points to *Love v. Comm'r of Soc. Sec.* 605 F. Supp. 2d 893, 907 (W.D. Mich. 2009) in which the court held that the ALJ erred in holding that the plaintiff would need an assistive device to ambulate but had the ability to carry 20 pounds. Here, the Court finds that the vocational expert's testimony is based upon substantial evidence.

The vocational expert's testimony was consistent with the ALJ's RFC finding and included all of the limitations that were supported by the medical record. [Tr. 35–36.] Based on the testimony of the vocational expert, considering Mr. Pack's RFC limitations, he is capable of jobs such as inspector, routing clerk, and office cleaner, all jobs existing in significant numbers in the national economy. *Id.* at 36. If the hypothetical question posed to the vocational expert accurately portrays a claimant's physical and mental impairments, the response of the vocational expert is considered "substantival evidence." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235–39 (6th Cir. 2002). Here, that question was based on the ALJ's RFC, which is also supported by substantial evidence. [Tr. 31.] Although the vocational expert testified that the DOT "does not address the limitations in the use of a cane," he relied on his professional education and experience in vocational-rehabilitation, as well as resources from the U.S. Department of Labor

and SkillTran in making his determinations. [*See* Tr. 36.]; *see also Skaggs v. Berryhill*, 2018 WL 4558203, at *7 (W.D. Ky. Sept. 21, 2018) (holding that although the vocational expert's testimony departed from information in the DOT, the vocational expert's testimony was appropriate based "on his professional education, training, [and] experience"). The expert's opinion is not contradicted by the ALJ's RFC finding and constitutes substantial evidence cited by the ALJ to support the conclusion that Mr. Pack could perform light work.

Furthermore, *Love* is distinguishable from Mr. Pack's situation because unlike in *Love*, the vocational expert acknowledged Mr. Pack's limitations and still identified 60,000 routing clerk jobs, 130,000 inspector jobs, and 150,000 office cleaner jobs Mr. Pack could perform despite needing a cane to ambulate on uneven surfaces. [Tr. 61–62.] "There is no *per se* rule that use of a cane to ambulate precludes performance of all light jobs." *Scott v. Comm'r of Soc. Sec.*, 2018 WL 6175375, at *6 (E.D. Mich. Nov. 5, 2018) (citing *Scott v. Comm'r of Soc. Sec.*, 2015 WL 4634077, at *6 (E.D. Mich. July 6, 2015). Thus, the ALJ's reliance on the vocational expert's testimony was reasonable, as the vocational expert's testimony was based upon substantial evidence.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Rickey Pack's Motion for Summary Judgment [**R. 17**] is **DENIED**, but the Commissioner's Motion for Summary Judgment [**R. 19**] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 22nd day of December, 2020.

Gregory F. Van Tatenhove
United States District Judge

13